UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                                :
TRUSTEES OF THE WASHINGTON                      :
STATE PLUMBING AND PIPEFITTING                  :
INDUSTRY PENSION PLAN ET AL.,                   :     10 Civ. 0255
                                                :
               PLAINTIFF,                       :     **OPINION**
                                                :
       v.                                       :
                                                :
TREMONT PARTNERS, INC.,                         :
                                                :
               DEFENDANT                        :
                                                :
------------------------------------------------x

Plaintiffs are the trustees and fiduciaries of an employee benefits plan for the plumbers and pipefitters industry in the state of Washington. In 2005, after years of using Tremont Partners, Inc. ("Tremont") as an investment manager, plaintiffs signed a Subscription Agreement ("Agreement") pursuant to which the Plan obtained shares in a hedge fund, the Tremont Core Strategies Fund (the "Fund"), which was managed by Tremont. The Agreement contained a forum selection clause providing that all disputes with respect to the Agreement and the Fund be brought in the Cayman Islands. Tremont now moves for judgment on the pleadings on the basis that the forum selection clause requires this case to be brought in the Cayman Islands. Plaintiffs oppose, and move for judgment on defendants' counterclaims and to strike

defendants' affirmative defenses.

The court denies Tremont's motion for judgment on the pleadings. The plaintiffs' motions are granted in part and denied in part, as will be described.

## THE PLEADINGS

Plaintiffs are the trustees and fiduciaries of the Washington State Plumbing and Pipefitting Industry Pension Plan (the "Plan"). The Plan is a multi-employer employee benefits plan governed by ERISA, with its sole purpose to provide pension benefits to eligible members of the Washington State plumbing and pipefitting industry.

Defendant Tremont is an investment manager that operated various hedge funds, a number of which were "feeder funds" to the now well-known Ponzi scheme of Bernard Madoff.

This case, like many others before this court, arises from the massive Ponzi scheme perpetrated by Madoff. The court will not describe in full the detailed circumstances of Madoff's Ponzi scheme, which have been thoroughly detailed by this court and others. The link in this case to Madoff's Ponzi scheme is the Tremont Core Strategies Fund ("the Fund"), managed by Tremont, and invested in by plaintiffs from 2005 through the present date.

As noted above, before 2005, Tremont had already been providing investment management services to plaintiffs. During 2005, Tremont created the Fund. The Fund principally offered its shares to ERISA plans such as the Plan. The Plan entered into a Subscription Agreement with Tremont in June

2005, pursuant to which the Plan became a shareholder of the Fund. After the Plan became a shareholder of the Fund and entrusted its money to Tremont, Tremont, as manager of the Fund, invested some portion of that with Madoff. The Plan lost money when Madoff's Ponzi scheme was revealed and seeks to recover the lost money from Tremont through this lawsuit.

The gravamen of this lawsuit is that Tremont, which served as the investment manager to the Fund, was bound by ERISA's fiduciary standards with respect to its management of the Fund, and violated those duties by failing to conduct adequate due diligence regarding the Fund's investments or its managers and failing to appropriately investigate red flags or warning signs that the Fund's assets were improperly invested. In sum, plaintiffs allege that Tremont should have been more careful about investing the Plan's assets, which were invested in the Fund and subsequently invested by with Madoff, and that, had Tremont been more prudent, such investments with Madoff would not have occurred. Plaintiffs also accuse Tremont of having a conflict of interest, which contributed to Tremont's not appropriately managing the money entrusted to it by plaintiffs.

As described above, when the Plan invested in the Fund, it did so by signing the Agreement. The Agreement is an agreement between the Plan and the Fund. It contains the following forum selection clause:

> Investor agrees that any suit, action or proceeding ("Proceeding") brought by Investor with respect to this Agreement and the Fund shall be brought in the Cayman Islands. Investor irrevocably submits to the jurisdiction of the Cayman Islands courts with respect to any Proceeding and consents that service of process as provided by Cayman Islands law may be made upon Investor in

such Proceeding, and may not claim that [the] Proceeding has been brought in an inconvenient forum.

The Fund is a corporation organized under Cayman Islands law.

The complaint alleges claims arising under ERISA.  The first such claim is a claim for breach of fiduciary duty by failing to prudently and loyally manage the Plan assets.  The second is a claim for breach of the duty to avoid conflicts of interest.

Tremont answered, denying the allegations, and asserting two counterclaims.  The counterclaims request that the court enforce the forum selection clause and seek damages for its breach.  Tremont also asserted a number of affirmative defenses, including defenses based on improper venue because of the forum selection clause, lack of standing, and comparative fault or contribution.

## THE MOTIONS

Tremont moves for judgment on the pleadings on the basis of the forum selection clause described above.  Plaintiffs oppose, and have moved to dismiss Tremont's counterclaims as well as the first, third, and fourth of Tremont's affirmative defenses.

## DISCUSSION

The Forum Selection Clause

There is a four part test to determine whether a forum selection clause should be enforced.  The first part of the test requires determination of whether

the clause was "reasonably communicated to the party resisting enforcement." Phillips v. Audio Active Limited, 494 F.3d 378, 383 (2d Cir. 2007).  The second prong requires a determination of whether the clause is mandatory or permissive, i.e., whether claims simply "may" be brought in the chosen forum, or whether they "must" be brought there.  Id.  The third prong requires consideration of whether the claim at issue is subject to the clause.  Id.  If all three of these are met, the clause is presumptively enforceable.  Id.  The fourth prong of the test allows a party to overcome the presumption of enforceability by demonstrating that it would be unreasonable or unfair to enforce the forum selection clause in this instance, or that the clause is invalid because of fraud or overreaching.  Id. at 384.  A court may enforce a forum selection clause by granting judgment on the pleadings.  See Fed. Ins. Co. v. M/V "Ville D'Aquarius", No. 08 Civ. 8997, 2009 WL 3398266, at *3 (S.D.N.Y. Oct. 20, 2009).

      Here, regarding the first step, there is no serious contention that the clause was not reasonably communicated to the Plan.  The FSC is part of the Subscription Agreement.  It is located in a section entitled "Supplemental Disclosure Statement to Information Memorandum and Subscription Materials."  This section of the Subscription Agreement is signed by the Plan and, in various places, answers to certain questions are checked "yes" or "no" by the Plan.

      Additionally, the FSC is a mandatory clause, as applied to plaintiffs.  It provides that, for the Plan, disputes with respect to the Agreement or the Fund

"shall" be brought in the Cayman Islands, although it allows Tremont to bring suit elsewhere if it so chooses.  Unlike a permissive clause, which would provide that certain disputes "may" be brought by the Plan in the Cayman Islands, this clause requires that such suits be brought there.

The third prong of the test requires the court to determine whether the claims in this case—claims brought under ERISA—are within the scope of the forum selection clause. The language in the forum selection clause, "with respect to this Agreement and the Fund," is broad enough to cover the claims in this case.

However, all that has just been said is overridden by the exclusive jurisdiction clause in ERISA which provides that:

> the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title.

29 U.S.C. § 1132(e)(1).

The parties have not cited any cases dealing with the relationship between ERISA and a forum selection clause. However, there are cases dealing with other exclusive federal jurisdiction statutes, and these cases hold that a forum selection clause providing for state court treatment will not be enforced. *See* U.S. ex rel. B & D Meek Contractors, Inc. v. St. Paul Mercury Ins. Co., 70 F.3d 1115 (10th Cir. 1995); Universal Grading Service v. eBay Inc., No. 08-cv-3557, 2009 WL 2029796 (E.D.N.Y. June 10, 2009); Cuno, Inc. v. Hayward Indust. Products, Inc., No. 03-cv-3076, 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005).

Defendants rely on the Second Circuit's decision in <u>Bird v. Shearson Lehman/Am. Express, Inc.</u>, 926 F.2d 116 (2d Cir. 1991), which did involve ERISA's exclusive jurisdiction provision. However, this decision did not really deal with a forum selection clause but an agreement to arbitrate. It would seem clear that the enforcement of an arbitration agreement, in view of the very favorable attitude of the federal judiciary toward arbitration, involves something different from carrying out a forum selection clause providing that an ERISA claim is to be heard in the courts of the Cayman Islands.

This means that defendants' motion for judgment on the pleadings based on the forum selection clause is denied.

<u>Counterclaims and Affirmative Defenses</u>

Plaintiffs' motion to dismiss the counterclaims is granted since the counterclaims seek enforcement of the forum selection clause.

Plaintiffs also seek dismissal of the first, third, and fourth affirmative defenses.

The first affirmative defense must be dismissed because it seeks enforcement of the forum selection clause.

The third affirmative defense is that plaintiffs lack standing. However, it would appear that plaintiffs do have standing and that Tremont's argument in favor of the third affirmative defense really goes to the merits of plaintiffs' claim which are not being considered at this time. Thus defendants' third affirmative defense is dismissed.

The fourth affirmative defense asserts contribution, comparative fault, and contributory negligence. It is not clear, under Second Circuit authority, that these defenses can have no effect. The court will leave standing the fourth affirmative defense at the present time.

## Conclusion

Tremont's motion for judgment on the pleadings based on the forum selection clause is denied.

Plaintiffs' motion to dismiss the counterclaims and the first and third affirmative defenses is granted. Plaintiffs' motion is denied as to the fourth affirmative defense.

This opinion resolves the documents listed as numbers 25 and 31 on the docket of case 10 Civ. 0255.

So ordered.

Dated: New York, New York
August 16, 2012

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Aug 16, 2012